Filed 9/10/15  P. v. Garrett CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARCUS DEWAYNE GARRETT,<br><br>    Defendant and Appellant. | B260697<br><br>(Los Angeles County<br>Super. Ct. No. MA063390) |

APPEAL from a judgment of the Superior Court for the County of Los Angeles. Charles A. Chung, Judge.  Affirmed.

Caneel C. Fraser, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

On October 28, 2014, defendant Marcus Dewayne Garrett was convicted by a jury of carrying a dirk or dagger in violation of Penal Code section 21310, a felony.[1]  In a separate proceeding, the trial court found defendant's prior conviction in another state qualified as a strike.  The court sentenced defendant to six years in state prison (the upper term, doubled for the strike).

The facts were these.  Deputy Sheriff Mike Reynolds was on patrol at 2:46 a.m. on June 24, 2014, in a park area called Boeing Plaza, across the street from the Lancaster sheriff's station.  He approached defendant, who was sleeping on a mattress, intending to warn or cite him for illegal camping in the park.  Two other men were there as well, about 20 feet away.

Deputy Reynolds woke defendant up and asked him for identification.  (One of the other men present later testified that Deputy Reynolds was "rude," and woke up defendant by kicking at his mat and yelling at him.)  As defendant was digging through his pockets, Deputy Reynolds noticed what "appeared to be possibly a knife in his right pocket sticking out."  The deputy saw "approximately an inch of the end of the handle," and asked defendant about it.  Defendant told him "it was a knife and he had it for his protection."  Deputy Reynolds removed it from defendant's pocket and saw it was a fixed blade knife, with a metal blade about four and a half inches long.  Deputy Reynolds then arrested defendant. (He did not arrest the other two men, who complied with his request to leave the area.)

As he was transporting defendant across the street to the sheriff's station in his patrol vehicle, defendant spoke to Deputy Reynolds (who did not solicit any statements from defendant).  Defendant told the deputy "about a prior contact that occurred on June 8th with respect to [the] knife."  Defendant said "he had possessed the knife on

---

[1]     Penal Code section 21310 provides, with inapplicable exceptions, that "any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

June 8th."[2] (The trial court later ruled defendant's statements during transport to the station were spontaneous statements that did not violate *Miranda*.)[3]

At the outset of defendant's preliminary hearing in July 2014, defendant indicated he wanted the court to remove his attorney and appoint another. The court held a *Marsden* hearing.[4] After discussion with defendant and defense counsel, the court denied the *Marsden* motion, finding counsel had properly represented defendant and would continue to do so. At his arraignment, defendant renewed his *Marsden* motion, but told the court he had nothing new to add to his initial motion. The court found there was no cause to have another hearing.

In August 2014, defendant filed a *Pitchess* motion,[5] asking for materials concerning complaints against Deputy Reynolds. The trial court found good cause to conduct an in camera inspection of the deputy's personnel records with respect to "fabrication of charges, false arrest, perjury, dishonesty, and writing of false police reports." At the *Pitchess* hearing, the court found good cause for disclosure of certain records.

At trial, Deputy Reynolds testified to the facts described above. The defense presented two witnesses. Jeffrey Monroe, a friend of defendant's who was one of the two men in the park when defendant was arrested, testified that defendant had a knife that he used to "strip down kegs and things like that he recycles." Mr. Monroe said defendant usually kept the knife "either like on the concrete or near his mat," and he had never seen

---

**2**    This refers to an incident discussed at an Evidence Code section 402 hearing. Defendant told Deputy Reynolds he had been arrested on June 8th for stabbing someone, and that he was carrying a knife different from the folding knife police found during that incident. The court refused to allow mention of the arrest or the stabbing, but allowed the district attorney to elicit defendant's admission he had been carrying a knife on that date.

**3**    *Miranda v. Arizona* (1966) 384 U.S. 436.

**4**    *People v. Marsden* (1970) 2 Cal.3d 118.

**5**    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

defendant keep it in his pocket. He testified the knife was not in defendant's pocket on June 24th, and that defendant "had his knife on his mattress or next to him."

Merica Edwards, the coordinator at a soup kitchen, testified defendant had worked with her there for the last two years, twice a week, and she had never seen him carry a knife in his pocket. Defendant told her he had a knife he used for recyclables, to "open sacks and stuff like that."

The jury found defendant guilty.

Defendant waived his right to a jury trial on his prior conviction. At the court trial, the prosecutor presented evidence of defendant's conviction in Shelby County, Tennessee in 1997 of second degree murder. The evidence showed defendant was indicted for first degree murder with premeditation, and pled guilty to second degree murder. Defense counsel argued there were no facts in the record about the murder; second degree murder in Tennessee included a killing that results from the unlawful distribution of certain drugs when the drug was the proximate cause of death; and "we are looking at involuntary manslaughter, which by itself is not a strike." The court indicated further research on the Tennessee statute was necessary, and continued the hearing.

The prosecutor then filed a sentencing memorandum, attaching as an exhibit the plea transcript in the Tennessee proceeding. The transcript revealed that the defense stipulated to "the facts had we gone to trial," as follows: there was an altercation at a bar or club "in which [defendant] and the victim . . . got into it, because [the victim] had bumped into [defendant] there in the club." Later, there was another exchange; defendant and the victim went outside; and "there was some discussion between the two of them, during which time [defendant] produced a handgun and did shoot [the victim]."

The court found defendant suffered a qualifying strike prior. The court sentenced defendant to the high term of three years, doubled, for a total of six years in state prison. The court also imposed a $1,800 restitution fine; a $1,800 parole revocation fine (stayed); a $40 court operation fee; and a $30 criminal conviction assessment fee. The court ordered submission of a DNA sample and ordered custody credits totaling 336 days (168 actual and 168 conduct).

4

The court stated its reasons for sentencing defendant to the high term: "You did commit a murder and you were sentenced to 15 years. You were not out all that long before you picked up a misdemeanor 273.5. It was just a handful of months after you picked up the misdemeanor domestic violence that you were then caught with a weapon. I fully recognize that you were homeless and that you had that on your person perhaps for utility purposes, not necessarily as a weapon, but at this point in your life you are held to a much stricter standard."

Defendant filed a timely appeal.

Defendant's appointed counsel filed a *Wende* brief (*People v. Wende* (1979) 25 Cal.3d 436) requesting our independent review of the record. A declaration from counsel stated that she had explained to defendant her evaluation of the record, her intent to file a *Wende* brief, and defendant's right to file a brief of his own and to relieve her as counsel. Counsel also mailed a copy of the record on appeal to defendant. No supplemental brief has been filed.

We have reviewed the record on appeal, and find no arguable issues.

Counsel has also requested us to conduct an independent review of the reporter's transcript of the *Pitchess* hearing. We have done so, and find no abuse of discretion in the trial court's orders. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228; *People v. Jackson* (1996) 13 Cal.4th 1164, 1220-1221.)

In short, we are satisfied that defendant's appointed counsel has fully complied with counsel's responsibilities and that no arguable issues exist. (*People v. Kelly* (2006) 40 Cal.4th 106, 109-110; *People v. Wende, supra,* 25 Cal.3d at p. 441.)

## DISPOSITION

The judgment is affirmed.

GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.

FLIER, J.

5